## MARTIN & GOFF v. ALFRED F. PEPALL.

A husband in the actual possession of the wife's real estate, no trustee of the same having been appointed under the "Act concerning the property of married women," is, notwithstanding the provisions of said act, so far seized of her real estate, that where his interest in the same is sold under a decree against him for the enforcement of a mechanic's lien, the purchaser may maintain trespass and ejectment against the husband to recover possession of such estate.

TRESPASS and ejectment, to recover possession of a dwelling-house and three lots of land, situated on Bacon Street, Providence. Plea, the general issue.

At the trial of the case before the court, to whom the same was submitted in fact and law, it appeared, that the plaintiffs claimed title to the premises by virtue of a deed executed to

Martin & Goff *v.* Pepall.

them by a master of the court of common pleas of the county of Providence, under a decree of sale of a portion of the premises, rendered at the June term of said court, upon a petition under the mechanics' lien law, between the same parties. The premises consisted of three lots of land; the title of lot No. 1 being in the defendant, and of lots No. 2 and 3 in his wife. The dwelling-house, upon which the work was done by the plaintiffs, originally stood upon lot No. 1, but was removed by the husband to lot No. 3, belonging to his wife, and had been removed to said lot when the contract of the plaintiffs to put the house in repair was performed, and the work was done. The three lots were used by the husband and wife in common, being in one enclosure; the barn standing on the husband's lot No. 1, and the wife's two lots Nos. 2 and 3 — except so far as occupied by the house, — being used as a garden. The decree in the lien suit recited the amount due to the plaintiffs upon their contract for the repair of the house made with the defendant, and also recited, that the plaintiffs had a lien for the amount " upon the house and other buildings and improvements, and on lots Nos. 2 and 3," making no reference to lot No. 1 ; and ordered the dwelling-house, &c., and the defendant's interest in lots Nos. 2 and 3 to be sold, &c. The deed executed by the master to the plaintiffs bore date Oct. 17, 1857, and pursued the language of the decree.

*Metcalf*, for the plaintiffs, contended, that it must be presumed that the house stood upon the wife's lots, Nos. 2 and 3, with her consent, so as to warrant an entry thereon by the plaintiffs, as purchasers, under the decree, of the house; and if so, to warrant an ejectment to secure the right of the plaintiffs to remove the house.

*W. H. Potter*, for the defendant, urged, that the house being upon the wife's land, in which she was protected from her husband's debts by the married woman's act, ejectment could not be maintained for possession of the house and land without impairing the wife's rights ; that, besides, the house was personal estate only ; so that the remedy of the plaintiffs was trover, and not ejectment ; or they might enter and remove the house ; the decree giving them a license to do so.

BRAYTON, J. In this case, the defendant claims that the plaintiffs have shown no possessory title in themselves sufficient to maintain ejectment; that under the act entitled "an act concerning the property of married women," the entire interest, right, and title to the land described, was vested in Catharine J. Pepall, the wife, solely, and to her sole and separate use; and that Alfred Pepall, the husband, had not, at any time, any title or interest in the premises which could be taken in any way for his debts, and, therefore, that nothing passed by the sale and conveyance of the master, under the decree for sale.

The first section of the "Act Concerning the Property of Married Women," Dig. 1844, p. 270, provides, that the real estate, &c., which are the property of any woman before marriage, or which may become the property of any woman after marriage, shall be, and are hereby so far secured to her sole and separate use, that the same, and the rents, profits, and income thereof, shall not be liable to be attached, or in any way taken for the debts of the husband, either before or after his death.

It further provides, that the receipt or discharge of the husband for the rents and profits of such property, shall be a sufficient discharge therefor, unless previous notice in writing shall be given by the wife to the lessee, debtor, or incorporated company, from whom such rents and profits are payable.

The fourth section of said act provides, that nothing in this act shall be construed to impair the rights of the husband, upon the death of the wife, as tenant by the curtesy.

The question here is, what are the rights of the husband in the real estate of his wife secured to her sole and separate use, so far as it is so secured to her by the provisions of this act?

It is not expressly declared, anywhere, that an estate coming to her after marriage shall be absolutely secured to her sole and separate use; but that it shall be so far secured, that it shall not be attached, or in any way taken, for the husband's debts; nor shall the rents, profits, or income. It is, nevertheless, declared, that the husband may receive the rents and profits to his own use, unless and until, the wife shall, by a notice in writing to those from whom they are due and payable, forbid the payment

to him ; and from the time of such notice only, shall she be secure in the payment of them to her sole use.   No authority is given by the act to the wife to convey, lease, or release, the estate or the income thereof, without the joining of the husband therein.   His right, as tenant by the curtesy upon her death, is not to be in any way impaired, even by the written notice.   The act evidently contemplates that some of the common-law rights, interests, or powers, are vested in the husband ; and that the rights of the wife, as they existed before the statute, though greatly enlarged, are not to be so far extended as to exclude all control of the husband in the same absolute manner as he would be excluded from the control of an estate, if conveyed expressly to her sole and separate use.

By the common law, upon the marriage, the husband became seized with the wife of her estate; and acquired a freehold *jure uxoris*, which would continue during their joint lives.   2 Kent, ·Com. 730.   As husband, he had the right to take the rents and profits of the estate to his own use.   Ibid.;  Co. Lit. 351 *a*.   He had the power to lease the estate even before the birth of issue; and the wife could not avoid the lease-till his death.   2 Saund. 180 *a*, *n. g.*

Upon the birth of issue, he became possessed of an indefeasible estate for his own life, which he might convey.   In case of treason committed by the wife, her estate became forfeited to the king ; but the forfeiture did not extend to the husband's estate after birth of issue.   If the husband committed treason, his estate by the curtesy became forfeited ; but if before the birth of issue, though the forfeiture did not carry with it an estate for life, it gave to the king what is termed the pernancy of the profits, and, necessarily, a right of possession to take them.   Co. Lit. 351 *a*.

A lease made by the husband gave the tenant under it the right of possession for the same purpose, — to take the rents and profits.

Though the second section of this act provides that the husband shall not, without joining the wife, sell, convey, or lease her chattels real, it does not, *in terms*, declare any such prohibition as to her real estate.   This restriction as to chattels real

was either superfluous, or it expressed in words, what must have been implied from the language of the preceding section. We cannot presume it to have been intended merely to repeat a prohibition before made. If it be intended as a prohibition now first made, it includes chattels real only, and not the real estate. If he had power before the act to execute leases and vest the tenant with the right of possession, that right is not now destroyed by any express provision; and by implication, at least, it was not intended to restrict it.

The purpose of this act, undoubtedly, was, as is apparent upon its face, to secure to the wife the receipt of the rents, issues, profits, and income of her estate, for her support and maintenance. It was, however, no purpose of the act to protect the husband against his creditors. For her security in this respect, the act has provided two modes, by which the income shall come to her sole use; *first*, if the husband be in possession, taking the rents and profits to his own use, as the notice in writing served upon him would not enable her to obtain the income, since she could not sue him if he refused to pay over, she has the power, upon petition in equity, to have a trustee of her estate appointed, who will take the rents and profits for her use; and, *secondly*, if the estate be under lease, or in the occupation of third persons, she may give to them the notice in writing prescribed by the act, and thereby secure the payment to her, and prevent payment to her husband. By these means, she is secured in the receipt of the income and profits, in so far, that from the time she exercises either of these powers, the income and profits cannot go to the use of any other person. These powers she may exercise at her election, and at any time when she may think her interest requires, or she may choose; and from that time the power of the husband ceases. But since the act did not intend to protect the husband in the receipt of the income to his own use, there seems to be no good reason why his common-law rights should be interfered with, until the wife shall deem it necessary for her protection and security; or, at least, shall express her desire that his power over the estate should cease by one of the modes provided.

Martin & Goff *v.* Papall.

The defendant, in the exercise certainly of a common-law right, places a dwelling-house upon the land of his wife, he being in the actual possession, taking the rents and profits as was his right, without the appointment of any trustee of that estate. He employed mechanics to labor upon and furnish materials for it; and by means of such employment and labor and materials furnished, a lien was created by force of the statute upon the building and upon his interest in the land; and under the decree establishing the lien and ordering a sale for the payment of the sum found due, that interest was sold and conveyed to the plaintiffs. Neither the condition of the defendant, nor his right in the estate, have been changed by act of the wife down to this time. The effect of all this is, to pass to the plaintiffs neither more nor less than might have passed by a lease from the defendant to the plaintiffs. It is a statute conveyance of the same right and interest. When conveyed, it remains in their hands defeasible in the same manner and by the exercise of the same powers as would defeat the husband's right unconveyed; and the plaintiffs, though they may be put into possession of the premises, are liable the next instant, upon notice from the wife, to pay the rent to her; or, upon the appointment of a trustee, may be compelled to yield up possession to him for the sole use of the wife.

Nevertheless, we see no reason why they should be debarred from the recovery of a defeasible interest, more than of one which is indefeasible. It is theirs, until the true intent of the act renders it necessary that it should be avoided.

*Judgment must, therefore, be for the plaintiffs, for possession.*