SARAH A. CRANSTON *vs*. FRANCIS A. CRANSTON, Executor.

PROVIDENCE—JULY 17, 1902.

PRESENT : Stiness, C. J., Tillinghast and Blodgett, JJ.

(1) *Estate by Marital Right. Power to Collect Rents and Income. Statutes. Husband and Wife.*

By the common law upon marriage the husband became seized with the wife of her estate, and acquired a freehold, *jure uxoris*, which would continue during their joint lives. As husband, he had the right to take the rents and profits of the estate to his own use. This marital estate was not destroyed by the act concerning the property of married women (Digest 1844, p. 270), although the interest was rendered a defeasible one, but the husband still had the right to take the rents and profits of the

wife's real estate to his own use until the wife should terminate that right in the manner provided by the statute.

By the provisions of Gen. Stat. cap. 152, of 1872, the estate by marital right was abolished in the property which was absolutely secured to the sole and separate use of the wife ; but the estate previously acquired being a vested one, the statute could not retroact to destroy it.

Hence a husband acquired a vested right to take to his own use the rents and profits of real estate which belonged to the wife at the time of their marriage, in 1853, until the wife terminated such right by the statutory method in force at the time the right accrued.

ASSUMPSIT.    Heard on demurrer to plea, and demurrer over-ruled.

BLODGETT, J.  On December 28, 1901, the plaintiff instituted this action in assumpsit to recover the sum of $118,491.54, claimed to be due her from the estate of her late husband, James E. Cranston, for rents collected by him in his lifetime from real estate, the fee of which was in the plaintiff at the time of her marriage, and which were never accounted for by him to her.

The defendant's fourth plea is as follows, the formal parts being omitted: " That at the time when the said several causes of action in the said several counts of the plaintiff's declaration are alleged to have accrued to the plaintiff, she, the said plaintiff, was the wife of the defendant's brother, James E. Cranston.  That they, the said plaintiff and the said James E. Cranston, were married on, to wit, June 21, 1853, and lived together as man and wife continuously from that time until the time of his death, to wit, the 5th day of April, A. D. 1901, and the defendant avers that the claim in the plaintiff's declaration set out is for certain rents claimed to have been collected by the said James E. Cranston in his lifetime from certain real estate which belonged to the said plaintiff at the time of her marriage to the said James E. Cranston, and this defendant further avers that at or about the time of said marriage, the said James E. Cranston took possession of the real and personal estate of his wife by reason of his marital right and has retained possession of the same to the time of his death, as aforesaid, with the knowledge and consent of his said wife, the said plaintiff, Sarah A. Cranston.   And the defendant further avers that the

said plaintiff never, during the life of the said James E. Cranston, her aforesaid husband, gave the notice provided for by the statute in such cases to terminate marital estates, and that no trustee of the separate estate of the said plaintiff has ever been appointed."

To this plea the plaintiff has demurred, specifying for causes of demurrer,—

"1. That, as a matter of law upon the allegations in said plea contained, the said James E. Cranston had in his lifetime no marital or other right by virtue of which he was entitled to receive to his own use the rents of the plaintiff's real estate which the plaintiff claims to recover in this action.

"2. That the said James E. Cranston, upon the allegations in said plea contained, had, by virtue of his marital right to and possession of the real estate of the plaintiff, no right to collect and receive to his own use the rents of said real estate."

The case is now before the court upon this demurrer, and the question raised by it may be thus stated :

Had a husband the right, between 1853 and 1901, or for any part of said period, to take to his own use the rents of real estate which belonged to his wife at the time of their marriage, in 1853, and which she continued to own up to the time of the husband's death in 1901 ?

The facts upon which the plea is based, and which are admitted by the demurrers, are :

1. The marriage of the plaintiff with the defendant's brother, James E. Cranston, June 21, 1853.

2. The continued marital relation between them from that date to April 5, 1901, the time of the death of James E. Cranston.

3. The seizin of the plaintiff, at the time of her marriage with defendant's brother, of the real estate out of which the rents sued for in this case were collected by the defendant's brother.

4. The collection and retention by James E. Cranston of the rents so collected with the knowledge and consent of the plaintiff.

5. That the plaintiff never gave the notice provided for by

the statute to terminate marital estates, and that no trustee of the separate estate of the plaintiff was ever appointed.

What, then, was the nature of the marital estate of the husband at the time of his marriage to the plaintiff, on June 21, 1853?

(1)    In *Martin* v. *Pepall*, 6 R. I. 92 (decided in 1859), this court said : " By the common law, upon the marriage, the husband became seized with the wife of her estate, and acquired a free-hold *jure uxoris* which would continue during their joint lives. 2 Kent. Com. 730.    As husband, he had the right to take the rents and profits of the estate to his own use.    Ibid.; Co. Litt. 351 a.    He had the power to lease the estate even before the birth of issue and the wife could not avoid the lease until his death.    2 Saund. 180 *a. n. g.*    A lease made by the husband gave the tenant under it the right of possession for the same purpose—to take the rents and profits."

But the rights of the husband in the real estate of the wife were modified by the provisions of " An act concerning the property of married women," enacted in 1844 (see Digest of 1844, p. 270), and which was in force at the time of the marriage of the plaintiff and her late husband, in 1853.    The provisions of the act, so far as they are material to the present inquiry, are as follows :

"SEC. 1.    The real estate, chattels real, household furniture, plate, jewels, stock or shares in the capital stock of any incorporated company of the state, or debts secured by mortgage on property within this state, which are the property of any woman before marriage, or which may become the property of any woman after marriage, shall be and are hereby so far secured to her sole and separate use that the same and the rents, profits and income thereof, shall not be liable to be attached, or in any way taken for debts of the husband, either before or after his death ; and upon the death of the husband in the lifetime of the wife, shall be and remain her sole and separate property."    . . .

" The receipt or discharge of the husband for the rents and profits of such property shall be a sufficient receipt and discharge therefor, unless previous notice in writing shall be given

by the wife to the lessee, debtor or incorporated company from whom such rents or profits are payable ; in which case the sole and separate receipt or discharge of the wife shall alone be a sufficient receipt and discharge therefor."

"SEC. 2.    The chattels real, etc. (real estate not included), which are the property of any married woman before marriage or which may become the property of any woman after marriage, shall not be sold or conveyed by the husband, unless by deed in which the wife shall join as grantor."    .    .    .

"SEC. 7.    The supreme court may upon petition in equity to them by any married woman, filed by her through her next friend, appoint a trustee or trustees of her property secured to her by this act, who shall be empowered in his or their own name or names as trustee or trustees to sue for, recover and hold such property to the uses by law provided ; said trust to continue during the coverture of such married woman, unless by order of court sooner determined."

Construing this act, the court say in *Martin & Goff* v. *Pepall, supra :* "No authority is given by the act to the wife to convey, lease or release the estate or the income thereof without the joining of the husband therein."    .    .    .    "Though the second section of this act provides that the husband shall not, without joining the wife, sell, convey or lease her chattels real, it does not in terms declare any such prohibition as to her real estate ; " and on page 96 : "If he had power before the act to execute leases and vest the tenant with the right of possession, that right is not now destroyed by any express provision ; and by implication at least it was not intended to restrict it."    And in the case then before the court it was held that the husband's marital estate was subject to a mechanic's lien and could be sold and conveyed to a purchaser, and that the effect of such conveyance was "to pass to the plaintiffs neither more nor less than might have passed by a lease from the defendant to the plaintiffs," and that "although they might be put into possession of the premises" (page 97), "they are liable the next instant upon notice from the wife to pay the rent to her ; or, upon the appointment of a trustee, may be compelled to yield up possession to him for the sole use of the wife.    Neverthe-

less, we see no reason why they should be debarred from the recovery of a defeasible interest more than of one which is indefeasible. It is theirs until the true intent of the act renders it necessary that it should be avoided."

In view of the incidents which have thus been determined to attach to the husband's marital estate even under the act of 1844, it follows that at the time of the marriage in question, in 1853, the husband had a right to take the rents and profits of his wife's real estate to his own use until his wife should terminate that right in the manner provided by the statute. And this she could have done at any instant, whereupon the rights and powers of the husband would have ceased immediately.

These provisions are substantially re-enacted in the Revision of 1857, cap. 136, Rev. Stat. R. I. But in the Revision of 1872, taking effect December 2, 1872 (Gen. Stat. R. I. cap. 152), the language is very different, as will appear by section 1, which is as follows :

"The real estate, chattels real and personal estate which are the property of any woman before marriage or which may become the property of any woman after marriage, or which may be acquired by her own industry, *shall be absolutely secured to her sole and separate use*, neither the same nor the rents, profits or income of the same, nor any part thereof, shall be liable to be attached or in any way taken for the debts of the husband, before or after his death ; and upon the death of the husband in the lifetime of the wife shall be and remain her sole and separate property."

The effect of this provision upon the marital estate of the husband was considered by the court *In Re The Voting Laws*, 12 R. I. 586, decided in 1878, in which the court says, page 591, that by the act of 1844, *supra :* "The estate by marital right is evidently emasculated, and shorn of its strength, but it is not utterly abolished," and then continuing, on page 592, to contrast the provisions of the act of 1872, the court say : "But there can be no estate by marital right in the property which is absolutely secured to the sole and separate use of the wife. The estate is utterly incompatible with so exclusive

an appropriation.   .   .   .   Nothing remains for the husband which he can really call his own.   .   .   .   The new statute contains no saving in favor of estates by marital right acquired previous to its enactment.   Can the statute retroact so as to destroy an estate by marital right previously acquired and thus disfranchise the tenant?   We think not.   The estate previously acquired was a vested estate and could not be divested by mere legislative enactment.   Cooley's Const. Limit. 360, 361.   We think, therefore, that any person who had acquired a right to vote previous to December 2, 1872, as tenant by marital right, and *a fortiori,* as tenant by the courtesy initiate was not affected in his right by the new statute which then went into effect."   Accordingly the court held that the estate by marital right was sufficient to entitle the husband to vote upon the property of his wife under the provisions of article 2, section 1, of the constitution, which prescribes that an elector must be " really and truly possessed in his own right " to real estate to the constitutional amount, so long as the wife permitted him to remain in the enjoyment of it.

These citations appear to us to be decisive of the case at bar, and to establish in the husband a vested right, even after the statute of December 2, 1872, to collect the rents and profits of the real estate of which his wife was seized and possessed previous to that time, until she terminates that right by the statutory method in force at the time when the right accrued. Since the decision of this question is determinative of the plaintiff's right of recovery, the other questions raised are not considered.

The demurrer to the fourth plea is overruled.

*Comstock & Gardner,* for plaintiff.

*Herbert Almy,* for defendant.